IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LUKE W. ROHDE,

        Petitioner,

v.

MARK NOOTH,

        Respondent.

Civil No. 2:14-cv-01914-AC

FINDINGS AND RECOMMENDATION

KRISTINA HELLMAN
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

        Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
NICK M. KALLSTROM
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Judge.

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus (ECF No. 2) should be DENIED.

## BACKGROUND

On July 23, 2009, a Linn County grand jury indicted Petitioner on one count of Assault in the Second Degree. Resp. Exh. 102. Petitioner was alleged to have caused physical injury to Harley Denning, who was Petitioner's mother's fiancé, "by means of a dangerous weapon, to-wit: a concrete walkway[.]" *Id.*

The case was tried to a jury in September 2009. The victim, Denning, testified at trial. He stated that Petitioner became angry because Denning and Petitioner's mother had moved some of Petitioner's lumber. Petitioner and Denning argued, and Denning testified that after he told Petitioner he did not want to discuss the lumber any further, Petitioner tipped over a barbeque. According to Denning, Petitioner then physically attacked him, forced him to the ground, got on top of Denning, and stuck his fingers in Denning's eyes. Petitioner then grabbed Denning by the ears and pounded Denning's head into the ground approximately five times. Petitioner also punched Denning multiple times.

Denning also testified that as Petitioner assaulted him, Petitioner said to Denning "I'm going to show you what death is like[.]" Denning stated he yelled for help, and Petitioner stopped assaulting him when a neighbor, Ryan Loibl, arrived on the scene.

Petitioner's mother testified similarly. She testified that Petitioner became upset over some lumber and that a short time later, she heard Denning yelling for help. After she ran toward

2 - FINDINGS AND RECOMMENDATION -

Denning, Petitioner's mother testified that "my son had his hands kind of on [Denning's] ears and was banging his head into the concrete sidewalk." She also saw Petitioner hit Denning with his fists. Petitioner's mother stated that she tried to stop Petitioner and even bit him in an effort to stop the assault, but that she was not effective.

Petitioner's eight-year-old daughter also testified. She stated that she saw Petitioner push over the barbeque and then push Denning to the ground. She said she ran inside the house after that because she was scared.

The doctor who treated Denning following the assault testified that when Denning arrived at the emergency room, his eyes were swollen shut, his ear canals were completely filled with blood, and he had multiple contusions and abrasions on his head. The doctor concluded that Denning "suffered repeated blunt trauma injuries in and about the head and face pretty extensively." When asked whether a concrete walkway was capable of causing serious physical injury or death, the doctor answered, "Oh, of course."

Petitioner did not testify in his defense and did not offer any further evidence. During closing argument, Petitioner's trial attorney conceded that Petitioner had committed an assault, but argued that Petitioner did not use the sidewalk as a deadly weapon.

The jury found Petitioner guilty of Assault in the Second Degree. The trial judge sentenced Petitioner to 70 months of incarceration.

Petitioner appealed, but the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Rohde*, 239 Or. App. 629, 246 P.3d 755 (2010), *rev. denied*, 350 Or. 230, 253 P.3d 1079 (2011). Petitioner then sought state post-conviction relief ("PCR"). Resp. Exh. 109. Following an evidentiary hearing, the state PCR trial judge denied relief.

3 - FINDINGS AND RECOMMENDATION -

Resp. Exh. 130. Petitioner appealed, but again the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Rohde v. Nooth*, 262 Or. App. 238, 327 P.3d 572, *rev. denied*, 355 Or. 703, 350 P.3d 629 (2014).

On December 1, 2014, Petitioner filed his Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 with this Court. Petitioner alleges ten grounds for relief:

> **Ground One:** Violation of Petitioner's due process rights due to unconstitutional shackling.
> **Supporting Facts:** While Petitioner was handcuffed, legshackled, chained, and locked about the midsection, and locked within a steel cage, Petitioner was seen by and made eye contact with one or more jurors.
>
> **Ground Two:** Jurors failed to follow court instructions.
> **Supporting Facts:** Confirmed by video. Judge expressly stated they disobeyed his order.
>
> **Ground Three:** Sheriff's Department failed to close door between holding cell and public.
> **Supporting Facts:** Sheriff's department was aware that holding cell could be viewed by public, yet knowingly continued to open door after the judge informed them of their error and instructed them to keep the door closed during further trials.
>
> **Ground Four:** Judge knowing allowed trial to continue despite being aware of its unconstitutionality.
> **Supporting Facts:** Judge was aware of due process violation in which one or more juror saw Petitioner handcuffed, legshackled, chained, and locked about the midsection, and locked in a steel cage.
>
> **Ground Five:** Inadequate assistance of counsel, Petitioner asked counsel for complete client file, discovery, counsel would not provide.
> **Supporting Facts:** During their first meeting Petitioner asked counsel for copies of each and every piece of paperwork generated in regards to the charge against him. At each and every subsequent meeting petitioner continued to ask for all paperwork. Counsel provided Petitioner with only a copy of the indictment and a transcript of Petitioner's daughter's statements in an attempt to convince Petitioner to accept a plea bargain. Counsel refused to give any other discovery to Petitioner, which made Petitioner unable understand multiple aspects of the nature of the case and made him ill equipped to assist in his own defense.

4 - FINDINGS AND RECOMMENDATION -

**Ground Six:** Inadequate assistance of counsel. During trial, counsel refused to present self defense claim he had agreed with Petitioner to present.
**Supporting Facts:** Prior to trial counsel had agreed with Petitioner self defense was the cornerstone of the case; however, at trial counsel did not mention and further refused to mention the words self defense.

**Ground Seven:** Inadequate assistance of counsel. Counsel failed to present a witness who would have supported Petitioner's self defense claim.
**Supporting Facts:** Counsel did not call as a witness Mrs. Flora Loibl, who waited outside the courtroom to be called to testify and whose testimony would have supported Petitioner's claim of self defense.

**Ground Eight:** Inadequate assistance of counsel. Counsel failed to present witness who would have supported Petitioner's self defense claim.
**Supporting Facts:** Counsel did not call as a witness Mr. Ryan Loibl, who waited outside the courtroom to be called to testify and whose testimony would have supported Petitioner's claim of self defense.

**Ground Nine:** Judge allowed unfair trial to continue.
**Supporting Facts:** Trial judge was aware one or more jurors saw Petitioner shackled.

**Ground Ten:** Significant motion for mistrial not acknowledged or ruled upon.
**Supporting Facts:** During sentencing, Petitioner moved for a mistrial. The judge did not acknowledge Petitioner's motion and did not make a ruling on the motion.

In his counseled brief in support of his Petition, Petitioner addresses only two of the claims alleged: (1) that his due process rights were violated when at least one juror saw him shackled in a cage during a trial recess, and (2) that he received constitutional ineffective assistance of counsel because counsel failed to call witness Ryan Loibl to support Petitioner's claim of self-defense. Respondent contends Petitioner is not entitled to relief on the merits of either claim.[1] Respondent

---

[1] Respondent also argues, and Petitioner concedes, that Petitioner procedurally defaulted the due process claim. Because the Court finds Petitioner is not entitled to relief on the merits of this claim, however, the procedural default is not addressed. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Runningeagle v. Ryan*, 686 F.3d 758, 778 n.10 (9th Cir. 2012) (exercising discretion afforded under § 2254(b)(2) to decline to address procedural default issue where

5 - FINDINGS AND RECOMMENDATION -

further argues that Petitioner's ineffective assistance of counsel claim was rejected in a state-court decision which is entitled to deference. Finally, Respondent argues that Petitioner is not entitled to habeas corpus relief on the remaining claims alleged in the Petition but not addressed in the brief in support.

## LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2254(d), a petition for writ of habeas corpus filed by a state prisoner shall not be granted, with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

A state court unreasonably applies clearly established federal law, if its decision is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103; *Woodall*, 134 S. Ct. at 1702. A state court's factual determination is not unreasonable merely because the federal habeas court would reach a different conclusion in the first instance. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013). "Instead, § 2254(d)(2) requires that [this Court] accord the state trial court substantial deference." *Brumfield*, 135 S. Ct. at 2277. If reasonable minds reviewing the record might disagree about the finding in question, habeas relief is not warranted. *Id.*

---

relief denied on the merits), *cert. denied*, 133 S. Ct. 2766 (2013).

6 - FINDINGS AND RECOMMENDATION -

## DISCUSSION

I. **Due Process Claim**

Petitioner contends his due process rights were violated when one or more jurors observed Petitioner shackled in a cage in the sheriff's office during a trial recess, and the trial judge did not give any curative instruction or information to the jurors. After returning from a break in the trial proceedings, Petitioner's trial counsel informed the judge that Petitioner believed a juror had seen him shackled in "the cage" during the break. Trial counsel explained that Petitioner could not be certain that the juror saw him, but the door was open and Petitioner could see the juror. Petitioner then clarified that he may or may not have seen the juror, he was not sure. Trial counsel then asked whether he and Petitioner could view video from cameras located in the courthouse hallway, which the trial judge permitted.

Upon returning from viewing the videotape, trial counsel opined that it was highly likely that the juror did see the Petitioner in the cage, but he did not know for sure. Counsel reported that he discussed Petitioner's options with him, and that Petitioner wished to proceed with the trial. The judge asked whether Petitioner wanted any sort of curative instruction to be given to the jury, but trial counsel declined. Counsel reiterated that he had made Petitioner aware of his options, but that it would be Petitioner's decision whether to proceed in light of the uncertain information. The trial judge then asked Petitioner directly whether he wished to proceed with the trial even though one juror might have seen him, and Petitioner confirmed that he wished to proceed. No curative instructions were given and the matter was not further pursued at the trial.

At his sentencing hearing two weeks after the trial, Petitioner moved for a mistrial on the basis that he should not have been seen by the jury in shackles. The trial judge denied Petitioner's motion.

The Supreme Court has held that the Fifth and Fourteenth Amendments prohibit the use of visible shackles in the courtroom during the guilty and penalty phases of a criminal trial absent a trial court's express determination that they are justified by an essential state interest specific to the defendant on trial. *Deck v. Missouri*, 544 U.S. 622, 626 & 629 (2005). In so holding, the Court explained that "[j]udicial hostility to shackling" is premised upon three fundamental legal principles: (1) the presumption of innocence; (2) the right to counsel; and (3) maintaining the dignity of the judicial process. *Id.* at 630. The Ninth Circuit has consistently held, however, that a juror's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom does not raise a constitutional concern warranting habeas relief. *See, e.g., Ghent v. Woodford*, 279 F.3d 1121, 1133 (9th Cir. 2002) (brief or inadvertent glimpses "of a shackled defendant is not inherently or presumptively prejudicial"); *Castillo v. Stainer*, 983 F.2d 145, 147-48 (9th Cir. 1992) (finding no due process violation when some members of the jury pool saw the defendant in shackles in a court corridor).

Moreover, even if it is assumed that a juror's observation of a petitioner in shackles violated due process, the petitioner must demonstrate that it was more than harmless error. *Duckett v. Godinea*, 67 F.3d 734, 749 (9th Cir. 1995); *see also Larson v. Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008) (habeas court must assess whether shackling had substantial and injurious effect or influence in determining the jury's verdict pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). In order to determine whether the use of physical restraints was harmless, the court musts

consider the appearance and visibility of the restraining device, the nature of the crime with which the defendant was charged, and the strength of the state's evidence against the defendant. *Larson*, 515 F.3d at 1064.

As to the first factor, the evidence that a juror in fact saw Petitioner in restraints is not definitive; even after Petitioner and his trial attorney viewed the videotape from the courtroom hallway trial counsel stated that, although he believed it to be highly likely that a juror saw Petitioner in restraints, he nonetheless remained uncertain. Even if it is assumed that the juror did see Petitioner in shackles, a brief observation of Petitioner in restraints during a break in the trial did not undermine the presumption of innocence given the serious nature of the charge against him. *Brown v. Blacketter*, Case No. 3:08-cv-00204-HU, 2009 WL 4891952, at *5 (D. Or. Dec. 17, 2009). Indeed, after seeing Petitioner restrained in a hallway, and then noting the absence of any restraints in the courtroom, a jury could likely conclude that Petitioner "was not a dangerous individual in need of constant restraint." *Larson*, 515 F.3d at 1064.

In addition, the evidence against Petitioner was very strong. Petitioner's daughter testified that she saw Petitioner push over a barbeque and then push the victim to the ground. Both the victim and Petitioner's mother testified that Petitioner repeatedly slammed the victim's head into a concrete walkway, and the victim suffered serious injuries as a result. Given the cumulative strength of the witnesses' testimony, and the physical evidence of the victim's injuries, any juror's brief observation of Petitioner in restraints in the sheriff's office did not have a substantial and injurious effect on the verdict. Accordingly, any constitution error was harmless, and habeas relief is not warranted. *Brown*, 2009 WL 4891952, at *5.

9 - FINDINGS AND RECOMMENDATION -

## II. Ineffective Assistance of Counsel Claim

Petitioner alleges trial counsel was constitutionally ineffective because he did not present the testimony of Petitioner's neighbor, Ryan Loibl, who Petitioner claims would have supported a theory of self-defense.

A claim of ineffective assistance of counsel requires Petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Strickland v. Washington*, 466 U.S. 668, 687-88 (1987). To prove deficiency of performance, Petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Taylor*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 688. This Court's review of a claim of ineffective assistance of counsel is "doubly deferential" in that the Court takes a highly deferential look at counsel's performance under the deferential lens of § 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011); *Zapien v. Martel*, 805 F.3d 862, 869 (9th Cir. 2015).

"To establish prejudice [Petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Taylor*, 529 U.S. at 391 (quoting *Strickland*, 466 U.S. at 694); *Pinholster*, 563 U.S. at 189. In evaluating proof of prejudice, this Court considers the totality of the evidence before the jury. *Strickland*, 466 U.S. at 696. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*

The PCR trial judge rejected Petitioner's claim that counsel was ineffective for failing to call Ryan Loibl as a witness at trial. The judge found that by the time Loibl arrived on the scene

10 - FINDINGS AND RECOMMENDATION -

the fight was over. As a result, the PCR judge found that Loibl "saw nothing to help with self defense." Resp. Exh. 130, p. 2. The judge concluded that the failure to call Ryan Loibl had "no tendency to affect [the] outcome" and "no inadequacy, no prejudice." Resp. Exh. 130, p. 2.

In the PCR proceedings, Petitioner submitted an affidavit from Ryan Loibl, who stated that if he had been called to testify during Petitioner's criminal trial he would have testified that when he arrived on the scene Petitioner had a swollen lip and that Petitioner claimed the victim had struck him first. Loibl also stated that Petitioner had prior concerns about Denning's behavior. Loibl admitted in his affidavit, however, that the altercation had concluded by the time he arrived to find Petitioner sitting on top of the victim.

Petitioner's trial attorney submitted an affidavit averring that he did not recall Petitioner ever talking about Loibl prior to the trial. In any event, counsel noted that a police report from the assault indicated that Loibl ran over to the scene because he heard the victim yelling for help, and that when he arrived he saw Petitioner on top of the victim, but that he "didn't witness anything that led up to the fight." Resp. Exh. 128.

In light of the evidence, the PCR trial court reasonably applied *Strickland* to conclude that Petitioner failed to demonstrate trial counsel provided ineffective assistance or that Petitioner's was prejudiced by counsel's performance. Accordingly, the PCR court's decision is accorded deference under 28 U.S.C. § 2254(d)(2), and Petitioner is not entitled to habeas corpus relief.

### III. Unaddressed Claims

As noted above, Petitioner does not provide argument to support the numerous remaining claims alleged in his Petition. Additionally, Petitioner does not attempt to refute Respondent's argument that these claims do not entitle him to habeas corpus relief. Accordingly, Petitioner has

11 - FINDINGS AND RECOMMENDATION -

failed to sustain his burden of demonstrating why he is entitled to relief on his unargued claims. *See Lampert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004) (petitioner bears burden of proving his case); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2003) (same). Nevertheless, the Court has reviewed Petitioner's unargued claims and is satisfied that Petitioner is not entitled to relief on the remaining claims alleged in his Petition for Writ of Habeas Corpus.

## RECOMMENDATION

Based on the foregoing, I recommend that the Petition for Writ of Habeas Corpus (ECF No. 2) be DENIED that a judgment of dismissal be entered. A certificate of appealability should be DENIED as Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due November 23, 2016. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

IT IS SO ORDERED.

DATED this 9th day of November, 2016.

John V. Acosta
United States Magistrate Judge

12 - FINDINGS AND RECOMMENDATION -